FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABIGAIL P.,[1] | No. 2:20-cv-00401-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | **ECF Nos. 18, 20, 25** |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 18, 20, and Plaintiff's Motion to Strike Argument from Brief, ECF No. 25. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 18, grants Defendant's motion, ECF No. 20, and grants the motion to strike, ECF No. 25.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a

ORDER - 2

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

ORDER - 4

1      At step three, the Commissioner compares the claimant's impairment to

2  severe impairments recognized by the Commissioner to be so severe as to preclude

3  a person from engaging in substantial gainful activity.  20 C.F.R. §§

4  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

5  severe than one of the enumerated impairments, the Commissioner must find the

6  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

7      If the severity of the claimant's impairment does not meet or exceed the

8  severity of the enumerated impairments, the Commissioner must pause to assess

9  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

10  defined generally as the claimant's ability to perform physical and mental work

11  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

12  404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

13  analysis.

14      At step four, the Commissioner considers whether, in view of the claimant's

15  RFC, the claimant is capable of performing work that he or she has performed in

16  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

17  If the claimant is capable of performing past relevant work, the Commissioner

18  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

19  If the claimant is incapable of performing such work, the analysis proceeds to step

20  five.

ORDER - 5

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On August 14, 2018, Plaintiff applied for Title II disability insurance benefits, and on September 28, 2018, Plaintiff applied for Title XVI supplemental security income benefits, alleging a disability onset date of April 26, 2018 in both

applications.  Tr. 15, 52-53, 183-93.  The applications were denied initially and on

reconsideration.  Tr. 114-20, 123-28.  Plaintiff appeared before an administrative

law judge (ALJ) on February 6, 2020.  Tr. 36-51.  On March 31, 2020, the ALJ

denied Plaintiff's claim.  Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who meets the insured status requirements through December 31, 2023, has not

engaged in substantial gainful activity since April 26, 2018.  Tr. 17.  At step two,

the ALJ found that Plaintiff has the following severe impairments: fibromyalgia;

affective disorder; anxiety vs. post-traumatic stress disorder (PTSD); personality

disorder; and somatoform disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> She will occasionally need to change her position at will.  She can perform
> postural activities frequently, except that she can only occasionally climb
> ladders, ropes, and scaffolds.  She must avoid concentrated exposure to
> hazards such as unprotected heights and machinery with moving mechanical
> parts.  She can have occasional interaction with coworkers and members of
> the public.  She will be off-task or unproductive 10 percent of the workday.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 29.  At step five, the ALJ found that, considering Plaintiff's age,

ORDER - 7

education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as hotel housekeeper; basket filler; and assembler, small parts. Tr. 30. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of April 26, 2018, through the date of the decision. Tr. 30-31.

On September 22, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ conducted a proper step-five analysis.[3]

---

[3] Plaintiff raises the medical opinion evidence and step-five issues together in her briefing.

ORDER - 8

ECF No. 18 at 2.[4]

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate the opinions of Lewis Weaver, M.D.; J.D. Fitterer, M.D.; Nina Flavin, M.D.; and Catherine MacLennan, Ph.D.  ECF No. 18 at 3-17.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

---

[4] In her reply brief, Plaintiff also raised the issue of whether the decision was Constitutionally defective because the ALJ and Appeals Council derived authority from a Commissioner whose appointment and tenure were unconstitutional, due to a removal provision that violated separation of powers principles.  ECF No. 21 at 4-9.  The Ninth Circuit recently addressed the issue, severing the unconstitutional clause at issue, determining that there was no reason to regard any of the actions taken by the agency as void, and holding that unless a claimant demonstrates actual harm the unconstitutional provision has no effect on her case.  *Kaufmann v. Kijakazi*, No. 21-35344, 2022 WL 1233238, at *2, 4-6 (9th Cir. Apr. 27, 2022).  Plaintiff subsequently filed an unopposed motion to strike the issue.  ECF No. 25.

ORDER - 9

1   *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

2   C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no

3   longer "give any specific evidentiary weight . . . to any medical

4   opinion(s) . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-

5   68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider

6   and evaluate the persuasiveness of all medical opinions or prior administrative

7   medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b),

8   416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical

9   opinions and prior administrative medical findings include supportability,

10  consistency, relationship with the claimant (including length of the treatment,

11  frequency of examinations, purpose of the treatment, extent of the treatment, and

12  the existence of an examination), specialization, and "other factors that tend to

13  support or contradict a medical opinion or prior administrative medical finding"

14  (including, but not limited to, "evidence showing a medical source has familiarity

15  with the other evidence in the claim or an understanding of our disability

16  program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-

17  (5), 416.920c(c)(1)-(5).

18      Supportability and consistency are the most important factors, and therefore

19  the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

20

ORDER - 10

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors in paragraphs

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the

regulations displace the longstanding case law requiring an ALJ to provide specific

and legitimate reasons to reject an examining provider's opinion.  *Woods v.

Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The

1  Court held that the new regulations eliminate any hierarchy of medical opinions,

2  and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court

3  reasoned the "relationship factors" remain relevant under the new regulations, and

4  thus the ALJ can still consider the length and purpose of the treatment relationship,

5  the frequency of examinations, the kinds and extent of examinations that the

6  medical source has performed or ordered from specialists, and whether the medical

7  source has examined the claimant or merely reviewed the claimant's records.  *Id.* at

8  *6.  However, the ALJ is not required to make specific findings regarding the

9  relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

10  explanation supported by substantial evidence when rejecting an examining or

11  treating doctor's opinion as unsupported or inconsistent.  *Id.*

12      *1.  Dr. Weaver and Dr. Fitterer*

13      In December 2018, Dr. Weaver opined Plaintiff could occasionally lift and

14  carry 20 pounds and frequently lift and carry 10 pounds; she could stand and walk

15  for about six hours in an eight-hour workday and sit for about six hours in an eight-

16  hour workday; she could occasionally climb ladders, ropes, and scaffolds and

17  frequently stoop, kneel, crouch and crawl; and she should avoid even moderate

18  exposure to hazards.  Tr. 61-62, 75-76.  In March 2019, Dr. Fitterer affirmed Dr.

19  Weaver's opinion. Tr. 91-93, 105-107.  The ALJ found these opinions persuasive.

20  Tr. 26.

ORDER - 12

The ALJ found the opinions of Dr. Weaver and Dr. Fitterer persuasive because they were supported by reference to medical evidence and because they were consistent with the record as a whole.  *Id.*  Supportability and consistency are the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  Here, the ALJ noted the reviewing doctors referenced Plaintiff's fibromyalgia and other complaints, with "some findings of tenderness but otherwise largely normal physical exam findings."  Tr. 26.  The ALJ found the opinions consistent with the "expanded record as well," including minimal treatment for fibromyalgia, her providers observations she was typically not in distress, along with findings upon physical exams indicating normal strength, range of motion, and sensation.  *Id.*  Elsewhere in the decision, the ALJ noted the medical records do not document treatment for significant flare-ups of fibromyalgia, and that at times she denied significant pain.  Tr. 22 (citing, e.g., Tr. 517).  The ALJ also noted records show generally normal physical exam findings.  Tr. 23 (citing, e.g., Tr. 333-34, 421, 494, 587).  The ALJ reasonably

found the opinions of Dr. Weaver and Dr. Fitterer persuasive because they were supported by reference to medical evidence and consistent with the record.

Plaintiff contends that the ALJ erred by failing "to explain his departure from the opinions" of Dr. Weaver and Dr. Fitterer, as they opined Plaintiff should avoid even moderate exposure to hazards, and the ALJ determined "she must avoid concentrated exposure to hazards such as unprotected heights and machinery with moving mechanical parts." ECF No. 18 at 3-5; *see* Tr. 21. Upon his review, Dr. Fitterer indicated the limitation to avoid hazards was due to "headache precautions," both reviewing doctors assessed no other environmental limitations; and "machinery, heights, etc." are listed as examples on the form Dr. Weaver and Dr. Fitterer filled out. *See* Tr. 61-62, 91-93. Defendant contends that any error in asking the VE about concentrated exposure as opposed to even moderate exposure was harmless because the jobs the VE provided do not involve exposure to hazards, except for the small parts assembler job; and the only hazard required by that position is exposure to loud noise, which is not precluded for Plaintiff. ECF No. 20 at 8-9; *see* DOT No. 706.684-022, 1991 WL 679050. Accordingly, any alleged error in failing to fully credit the opinions of Dr. Weaver and Dr. Fitterer was inconsequential to the ultimate disability determination and therefore harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Even if the medical opinion evidence could be interpreted more

favorably to Plaintiff, if it is susceptible to more than one rational interpretation,

the ALJ's ultimate conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005).  Plaintiff is not entitled to remand on this issue.

### 2.  Dr. Flavin

On September 13, 2018, Dr. Flavin, a treating provider, completed a form

for medical or disability condition for Washington State DSHS and rendered an

opinion on Plaintiff's level of functioning.  Tr. 604-06.  Dr. Flavin noted Plaintiff's

diagnosis of fibromyalgia.  Tr. 604.  She indicated Plaintiff's conditions limit her

ability to lift heavy objects, stand or sit for long periods of time, follow

instructions, bend over, reach above, concentrate for long periods of time, and

make repetitive motions; and that Plaintiff should be limited to 11-20 hours per

week of work, looking for work, or preparing for work.  *Id.*  Dr. Flavin indicated

Plaintiff was limited to sedentary work; her condition was permanent and likely to

limit her ability to work, look for work, or train for work; and that treatment

included medication, counseling, and exercise.  Tr. 605.  She indicated there were

no specific issues that needed further evaluation or assessment.  Tr. 606.  The ALJ

found Dr. Flavin's opinion unpersuasive.  Tr. 26.

First, the ALJ found Dr. Flavin's opinion unpersuasive because she provided

"minimal comments on the form to support such extreme limitations."  *Id.*

Supportability is one of the most important factors an ALJ must consider when

ORDER - 15

1    determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2),

2    416.920c(b)(2).  The more relevant objective evidence and supporting explanations

3    that support a medical opinion, the more persuasive the medical opinion is.  20

4    C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Additionally, "the ALJ need not

5    accept the opinion of any physician, including a treating physician, if that opinion

6    is brief, conclusory and inadequately supported by clinical findings."  *Bray v.*

7    *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Here, the ALJ

8    noted Dr. Flavin did not explain her findings, providing only minimal comments

9    on the form; and Defendant points out that Dr. Flavin did not describe specific

10   limitations caused by fibromyalgia, as instructed on the form, but instead

11   underlined some of the examples provided on the form without explanation.  ECF

12   No. 20 at 11; *see* Tr. 604.  The ALJ reasonably determined Dr. Flavin's opinion

13   limiting Plaintiff to 11-20 hours of sedentary work a week due to fibromyalgia was

14   not supported, because Dr. Flavin did not explain her opinion.

15       The ALJ also concluded that "internal inconsistencies [in Dr. Flavin's

16   opinion] detract from the persuasiveness of the opinion."  Tr. 26.  The ALJ found

17   the extreme limitations given by Dr. Flavin were not supported by her conservative

18   treatment recommendations such as medication, counseling, and exercise.  *Id.*  The

19   ALJ noted that Plaintiff was already on medication, had declined counseling (at

20   that time), and found the "recommendation for exercise is contrary to the limitation

ORDER - 16

below sedentary exertion." Tr. 26.  Plaintiff points out that a recommendation for counseling and exercise does not detract from Dr. Flavin's opinion, and Defendant acknowledges that the ALJ erred in his finding that Dr. Flavin opined Plaintiff's limitations were temporary, as she indicated they were permanent on the form. ECF No. 18 at 14; ECF No. 20 at 15; *see* Tr. 605.  Any error by the ALJ in finding Dr. Flavin's opinion internally inconsistent was harmless, however, as the ALJ reasonably found Dr. Flavin's opinion was not explained, and the ALJ gave other reasons for finding Dr. Flavin's opinion unpersuasive, as discussed *infra*.

The ALJ also found Dr. Flavin's opinion was inconsistent with exam findings in the record.  Tr. 26.  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Additionally, a physician's opinion may also be rejected if it is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Here, the ALJ noted Dr. Flavin's opinion was "inconsistent with exam findings in the later record, showing normal gait, normal strength, minimal tender points, and no synovitis, as well as later treatment records with no significant flare ups of fibromyalgia."  Tr. 26.  As discussed *supra*, elsewhere in the decision the ALJ also noted medical records do not document treatment for significant flare-ups of fibromyalgia, at times Plaintiff denied significant pain, and records also show generally normal findings upon

ORDER - 17

physical exam.  *See* Tr. 22-23.  Additionally, while Dr. Flavin's treatment notes document a diagnosis of fibromyalgia, with 18 of 18 tender points noted in April 2018, her treatment plan consisted of continuing Cymbalta and "conservative measures and supportive care, recommend regular exercise and improving sleep hygiene," with no indication of sedentary or other work restrictions.  Tr. 417-18.

Treatment notes from September 13, 2018, the date Dr. Flavin completed her medical opinion form, show 11 of 18 tender points upon physical exam, normal neurological findings, ability to move all extremities symmetrically, and normal gait.  Tr. 421.  While Dr. Flavin noted Plaintiff's report of "ongoing fibro symptoms (diffuse pain, poor sleep) quite debilitating," her only recommendations were a trial of Lyrica and to "continue Cymbalta and other supportive measures." Tr. 422.  In December 2018, Dr. Flavin noted while Plaintiff reported numbness and tingling in her arms, nerve conduction studies were normal.  Tr. 494.  Dr. Flavin also reported that while Plaintiff reported neck pain and arm weakness, upon physical exam she did not appear in distress and there was "no evidence of active synovitis. Minimal tender points. Grip strength [was] normal, no weakness." *Id.*  Dr. Flavin noted at that time that Plaintiff was also "struggling with depression which can certainly affect fibromyalgia and make pain worse," but she did not indicate Plaintiff had physical or other restrictions.  Tr. 495.

ORDER - 18

1    The ALJ reasonably concluded Dr. Flavin's opinion was inconsistent with

2   treatment records and exam findings; and the ALJ's conclusion that Dr. Flavin's

3   opinion was inconsistent with exam findings in the record is supported by

4   substantial evidence.  Even if the medical opinion evidence could be interpreted

5   more favorably to Plaintiff, if it is susceptible to more than one rational

6   interpretation, the ALJ's ultimate conclusion must be upheld.  *Burch v. Barnhart*,

7   400 F.3d 676, 679 (9th Cir. 2005).

8        *3.  Dr. MacLennan*

9        On November 9, 2018, Dr. MacLennan completed a complex psychological

10   consultative evaluation and rendered an opinion on Plaintiff's level of functioning.

11   Tr. 437-59.  Dr. MacLennan diagnosed Plaintiff with complex PTSD; personality

12   disorder NOS (mixed personality disorder with borderline, paranoid, and avoidant

13   features); learning disorder, mathematics; pain disorder or somatic symptom

14   disorder; and substance dependence, methamphetamine, in sustained remission per

15   self-report.  Tr. 442.  She opined Plaintiff appeared to be able to reason, to have

16   adequate judgment, and to have adequate insight into her own condition.  Tr. 443.

17   She opined Plaintiff appeared to have adequate social skills, although she

18   "described having difficulty being around others and being stressed when she has

19   to be around people including at work."  *Id.*  She opined Plaintiff "is able to sustain

20   concentration, pace and persistence, when in a quiet environment without

ORDER - 19

distractions and without stress." *Id.* She further opined Plaintiff does not appear

adaptable or resilient enough to cope well with stress and change. *Id.* The ALJ

found Dr. MacLennan's opinion persuasive, "except to the extent that it indicates

that [Plaintiff] requires a particularly quiet environment or simple tasks." Tr. 27.

The ALJ found Dr. MacLennan's opinion Plaintiff "requires a particularly

quiet environment or simple tasks" was not consistent with generally normal

cognitive findings in the record, Plaintiff's online studies, and because the "greater

record does not reflect observations of noise sensitivity." *Id.* The more consistent

an opinion is with the evidence from other sources, the more persuasive the

opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Elsewhere in the

decision, the ALJ noted Plaintiff reported anxiety and depression since she was a

teenager, but that she had worked with these conditions from 2014 through 2018,

and she reported if she was not eligible for SSI, she was thinking of going back to

work. Tr. 25 (citing Tr. 227, 489, 575). The ALJ noted Plaintiff was taking online

courses in criminal justice and social services, and that physical and mental status

exams showed intact cognition, concentration, and attention. Tr. 23, 25 (citing,

e.g., Tr. 334, 415, 439, 490, 538, 545, 569).

The ALJ also found that Dr. MacLennan's own testing and examination

findings did not support her opinion that Plaintiff required a quiet environment or

would have difficulty with complex tasks. Tr. 27. The more relevant objective

ORDER - 20

1    evidence and supporting explanations that support a medical opinion, the more

2    persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

3    Elsewhere in the decision, the ALJ noted Dr. MacLennan's findings on

4    psychological testing, which showed average intellectual functioning and

5    processing speed, high average perceptual reasoning scores, low average auditory

6    memory and "otherwise average scores."  Tr. 23-24 (citing Tr. 441).  The ALJ also

7    explained that while Dr. MacLennan observed Plaintiff had a flat affect and she

8    noted Plaintiff's report of occasional auditory hallucinations, mental status findings

9    were otherwise generally normal, as Plaintiff denied suicidal ideation, showed no

10   signs of response to internal stimuli, had normal speech, responded adequately to

11   questions, and did not express concerns about her memory except for learning

12   mathematics.  Tr. 23-24; *see* Tr. 442.  The ALJ noted while Plaintiff had difficulty

13   with serial-seven subtractions, she was also "fully oriented, showed adequate fund

14   of knowledge and basic math, demonstrated ability to abstract and to register and

15   recall random words . . . ability to follow three-step instructions and comprehend

16   written instructions."  Tr. 24; *see* Tr. 443-44.  The ALJ noted her "score on the

17   Mini-Mental Status Examination was 27 out of 30."  Tr. 24; *see* Tr. 439-40.  The

18   ALJ concluded "considering [Plaintiff's] history of a math-related learning

19   disorder, these findings suggest generally normal memory and concentration, as

20   well as ability to sustain appropriate interaction . . . and adapt to the stress of the

examining." Tr. 24.  The ALJ reasonably found Dr. MacLennan's own testing and examination findings did not support limiting Plaintiff to simple tasks or a quiet environment.  The ALJ's conclusion that Dr. MacLennan's opinion was persuasive except to the extent that it indicates a particularly quiet environment or simple tasks is supported by substantial evidence.

Plaintiff is not entitled to remand on this issue.

**B. Step Five Analysis**

Plaintiff argues the ALJ erred at step five.  ECF No. 18 at 2, 5-7, 16-17.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*.  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76.

Plaintiff contends the ALJ erred by failing to provide limitations for all of Plaintiff's impairments in the RFC and the hypothetical to the vocational expert. ECF No. 18 at 2, 5-7, 16-17.  However, Plaintiff's argument assumes that the ALJ erred in his analysis of the medical opinions.  As addressed *supra*, the ALJ properly assessed the medical opinion evidence.

ORDER - 23

For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion and other evidence is legally sufficient and supported by substantial evidence.  The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis.  The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions in this record.

Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Unopposed Motion to Strike Argument Raised in Briefing, **ECF No. 25**, is **GRANTED.**

3. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

4. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

5. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 24

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED May 19, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 25